**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES R. STILLWAGON, | ) | |
| | ) | Case No. 2:14-cv-807 |
| Plaintiff, | ) | |
| v. | ) | CHIEF JUDGE EDMUND A. SARGUS, JR. |
| | ) | Magistrate Judge Terence P. Kemp |
| THE CITY OF DELAWARE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| JAMES R. STILLWAGON, | ) | |
| | ) | Case No. 2:14-cv-1606 |
| Plaintiff, | ) | |
| v. | ) | CHIEF JUDGE EDMUND A. SARGUS, JR. |
| | ) | Magistrate Judge Terence P. Kemp |
| OFFICER JAMES AILES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AGAINST DEFENDANTS SEGAARD AND WILLAUER- FALSE ARREST AND**
**MALICIOUS PROSECUTION CLAIMS (CASE No. 807) [Doc. 205]**

Plaintiff's Motion for Summary Judgment [Doc. 205] should be denied.

Plaintiff is correct; there are no genuine issues of material fact related to his claims of false arrest and malicious prosecution. However, the undisputed and material evidence demonstrates that Plaintiff's false arrest and malicious prosecution claims fail as a matter of law, and for this reason summary judgment must be entered in favor of Defendant Segaard and Defendant Willauer and all claims against them dismissed.

Plaintiff's Motion for Summary relies heavily, if not solely, upon extraneous and irrelevant facts, all of which are wholly unrelated to the legal and justiciable issue, namely probable cause. Notwithstanding Plaintiff's advocacy, the facts of this case are actually unambiguous and quite

straight-forward:  Plaintiff fired his gun at Mattingly five times, failing to retreat when he had an opportunity and duty to do so.  Plaintiff then physically attacked Mattingly, kicking him in the leg and striking him on the head with his gun, causing the gun to once again discharge. Plaintiff admits this occurred, and his admissions provided ample and legally sufficient probable cause for Plaintiff's arrest and prosecution. For these reason, Plaintiff's Motion for Summary Judgment must be denied and summary judgment is to be granted in favor of Defendants Willauer and Segaard.

# **TABLE OF CONTENTS**

I.     CLAIMS AT ISSUE ..................................................................................................1

II.    CLARIFICATION OF THE FACTS..........................................................................1

     A.    The facts providing Defendants with probable cause in this case are simple and straight forward. ...................................................................................1

     B.    The Delaware Police Department investigates this incident....................................3

     C.    A grand jury indicts Plaintiff on four counts of felonious assault. .........................4

III.   LAW AND ARGUMENT ...........................................................................................5

     A.    Defendants are absolutely immune from Plaintiff's malicious prosecution claim.............................................................................................................5

Grand jury witnesses, including law enforcement officers, have absolute immunity from any §1983 claim based on the witness' testimony. *Rehberg v. Paulk*, 566 U.S. 356, 368 (2012). This bright line rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness's testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution. *Id.* at 369.

     B.    Defendants Segaard and Willauer are entitled to qualified immunity from Plaintiff's federal claims..............................................................................7

Government officials performing discretionary functions are shielded from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Officers are not liable for bad guesses in gray areas, rather, they are only liable for transgressing bright lines. *Ferguson v. Leiter*, 220 F. Supp. 2d 875, 880 (N.D. Ohio 2002).

         1.    Plaintiff's false arrest claim fails. ................................................................7

             a.    Defendants did not falsely arrest Plaintiff in violation of the Fourth Amendment. ........................................................................7

i.      Defendants had probable cause to arrest Plaintiff for felonious assault.................................................................8

A false arrest claim brought under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005). A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002). The evidence gathered at the scene, including Plaintiff's admission that he shot at Mattingly's vehicle several times, then got off of his motorcycle, kicked Mattingly and hit Mattingly with his gun established probable cause.

ii.     The evidence did not compel a finding that Plaintiff was acting in self-defense. ..................................................9

Under Ohio law, "[s]elf-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Goff*, 942 N.E.2d 1075, 1082, 128 Ohio St.3d 169, 176 (Ohio 2010), quoting *State v. Thomas*, 673 N.E.2d 1339, 1342, 77 Ohio St.3d 323, 326 (Ohio 1997). The evidence produced in this case did not conclusively establish this affirmative defense and the determination of the application of the self-defense was properly left to judges and attorneys.

iii.    Defendant Willauer had probable cause to issue the criminal charge under the fellow officer rule / collective knowledge doctrine. .........................................11

Under the fellow officer rule / collective knowledge doctrine, probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of knowledge of the particular officer who may make the arrest. *U.S. v. Novotny*, 968 F.2d 22 (Table), 1992 WL 121728, *2 (10th Cir., June 5, 1992), citing *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Dist.1985). The evidence known to Defendant Segaard that established probable cause is imputed to Defendant Willauer.

b.     The alleged constitutional violation was not clearly established as of September 30, 2012. ..........................................12

To satisfy the second prong of the qualified immunity analysis, the right that the official is alleged to have violated must be clearly established in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. *IAnderson v. Creighton*, 482 U.S. 635, 639-640 (1987).

Plaintiff cannot satisfy this burden as the clearly established law demonstrates that the Defendants had probable cause for the arrest and that the Defendants appropriately left the determination of the applicability of the affirmative defense to judges and attorneys.

2.      Defendants are qualifiedly immune from Plaintiff's malicious prosecution claim. .................................................................................. 14

        a.      Plaintiff cannot produce evidence needed to support a claim for malicious prosecution ..............................................................14

To succeed on a Fourth Amendment malicious prosecution claim the plaintiff must prove: (1) that a criminal prosecution was initiated against the plaintiff; (2) that the defendant made, influenced, or participated in the decision to prosecute; (3) the defendant lacked probable cause for the criminal prosecution; (4) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure; and (5) the criminal proceeding must have been resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir.2010). The issuance of an indictment by a grand jury conclusively determines the existence of probable cause. *Barnes v. Wright,* 449 F.3d 709, 716 (6th Cir.2006). Concerns related to deficiencies in an investigation do not constitute evidence of irregularity in the actual grand jury proceedings sufficient to overcome the indictment. *Bakos v. City of Olmsted Falls*, 73 Fed.Appx. 152, 157 (6th Cir.2003). Plaintiff cannot prove these elements and this claim fails.

                i.      There is no evidence that Defendant Segaard ignored exculpatory evidence. ......................................................16

There is no evidence that Defendant Segaard ignored exculpatory evidence. The evidence alleged by Plaintiff to be exculpatory is actually either inculpatory or irrelevant to the criminal charges filed against Plaintiff.

                ii.     Plaintiff cannot establish a malicious prosecution claim based upon fabricated evidence. .............................18

There is no evidence that Defendant Segaard fabricated evidence. Assuming, arguendo, that a fabrication had occurred, a defendant has a complete defense to a fabrication claim if probable cause would have been found without the fabrication. *Richardson v. Nasser*, 2009 WL 4730446 (E.D. Mich., Dec. 9, 2009). In this case, the video recordings and Plaintiff's own statements established probable cause.

b.    Plaintiff cannot establish the second element of the qualified immunity analysis. ..........................................................19

As properly applied, qualified immunity protects the officer from making a mistake, regardless of whether his error is a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact. *Pearson*, 555 at 231.  In making this determination, the Court is required to employ a standard of objective reasonableness and in doing so, to analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the officer's position could have believed that his or her conduct was lawful, in light of clearly established law and the information that he possessed.  *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).

C.    Plaintiff's state law malicious prosecution fails as a matter of law. .....................20

1.    Defendants are absolutely immune from Plaintiff's state law malicious prosecution claim. ..................................................... 20

Ohio provides absolute testimonial immunity to witnesses in judicial proceedings.  *Schmidt v. State Aerial Farm Statistics, Inc.*, 403 N.E.2d 1026, 1028, 62 Ohio App.2d 48, 51 (6th Dist., 1978).  This immunity should extend to witnesses who participate in grand jury proceedings.  *Rehberg v. Paulk*, 566 U.S. 356, 368 (2012).

2.    Defendants are immune from Plaintiff's state law malicious prosecution claim pursuant to R.C. §2744.03(A)(6)................................ 20

The individually named defendants are immune under R.C. §2744.03(A)(6) unless one of three narrow exceptions to immunity apply.  No exception applies in this case and summary judgment should be granted.

3.    Plaintiff's state law malicious prosecution claim fails as a matter of law........................................................................................ 21

To prevail on a state law claim for malicious prosecution Plaintiff must prove (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736, 53 Ohio St.3d 142 (Ohio 1990).  Plaintiff cannot satisfy these elements and this claim fails.

IV.    CONCLUSION.................................................................................................21

## I.     CLAIMS AT ISSUE

Plaintiff asserts twelve (12) separate claims in his Amended Complaint [Doc. 78].  Plaintiff seeks summary judgment against Defendants Willauer and Segaard on only three of these claims: (1) in Count 1, Plaintiff alleges that Defendants violated Plaintiff's Fourth Amendment rights by falsely arresting him, (2) through Count 2, Plaintiff claims  Defendants violated Plaintiff's Fourth Amendment rights by maliciously prosecuting him, and (3) under Count 7, Plaintiff advances  a state law claim for malicious prosecution.  As will be shown, all these claims fail as a matter of law.

## II.    CLARIFICATION OF THE FACTS

### A.     The facts providing Defendants with probable cause in this case are simple and straight forward.

Plaintiff encountered Mattingly while traveling northbound on U.S. 42 on his motorcycle. Plaintiff claims that Mattingly, while *en route*, engaged in erratic driving which Plaintiff felt placed him in danger.  Indeed, Plaintiff devotes a significant portion of his 81-page brief describing his interactions with Mattingly while traveling along U.S. 42.  These claimed interactions, however, are immaterial to Plaintiff's causes of action and Defendants' defenses. Even assuming, arguendo, that Mattingly engaged in erratic driving and purported "road rage" that day, Mattingly's conduct is not at issue in this case. Instead, it is Plaintiff's unrepentant reaction to Mattingly's conduct, which included multiple uses of deadly force  and Plaintiff's own failure to retreat that provided the basis of the criminal charges filed later the same day.

It is undisputed that during the course of this encounter it was Plaintiff - not Mattingly - who purposefully armed himself with a gun.  Stillwagon Depo., p. 95-96 [Doc. 200].  Consider; at the same time Plaintiff removed his gun from his motorcycle's tank bag and placed it in his jacket so that he could have easy access to his weapon, Plaintiff spoke with non-party witness Lois

Reninger.  *Id.*  In the course of this conversation, Plaintiff told Reninger his plan was to "[g]et the son of the bitch," and rather than retreating, Plaintiff then began traveling northbound again on U.S. 42, in the same direction as Mattingly.  *Id.*  Plaintiff admitted making this statement during his interview by Officer Ailes, conducted immediately following the interaction with Ms. Reninger..  [Doc. 203, Ex. A-1,Cruiser Cam at 15:46:15].  Indeed, upon leaving this road-side reflection, Stillwagon was thinking "[H]e should be gone. He should be gone. Little bastard should be gone. <u>And I'm going to go up the road and if he's up there, I guess I'll see what he wants</u>." Stillwagon Depo., p. 83. (emphasis added.)

Stillwagon first fired shots at Mattingly on the Williams Street exit ramp from U.S. 23.  He now claims he fired because Mattingly was backing-up and he was scared he was in danger. Plaintiff's Motion for Summary Judgment against Segaard and Willauer, [Doc. 205], p. 25. However, this is not his original story.  When he spoke with Officer Ailes immediately after the incident, Plaintiff explained that he fired two shots at Mattingly's truck when they were "dead stopped at the light."  [Doc. 203, Ex. A-1,Cruiser Cam at 15:47:50].

Regardless, this fact discrepancy is immaterial because after shooting at Mattingly twice, Plaintiff followed Mattingly onto Williams Street. Mattingly turned into the AutoZone parking lot and, eight seconds later, Plaintiff followed, traveling into the very same driveway Mattingly had used.  Stillwagon Depo., p. 163-64; *see also* Doc. 203, Ex. A-2, Eagles Video at 15:30:55-15:30:05. The balance of the Stillwagon/Mattingly altercation is captured by surveillance camera - and is acknowledged by Plaintiff.  Mattingly exited the AutoZone parking lot and, as he did, Plaintiff fired two more shots at Mattingly.  Importantly, these shots were fired at Mattingly <u>when Mattingly was leaving</u>.  Stillwagon Depo., p. 169 (emphasis added).

2

After Mattingly exited the AutoZone parking lot, Plaintiff put his kickstand down, automatically disengaging the motorcycle's engine, and dismounted his bike.  *Id.* at 173, 185.  Mattingly circled around and re-entered the AutoZone parking lot.  *Id.* at 186, *see also* Doc. 203, Ex. A- 2, Eagles Video at 15:31:22.  Plaintiff then fired a fifth round into the <u>front</u> of Mattingly's truck. Stillwagon Depo., p. 187.  Plaintiff had not, though, finished his attack on Mattingly. After Mattingly stopped, Plaintiff walked over to the passenger side of Mattingly's truck with his gun in hand. *Id.  see also* Doc. 203, Ex. A-2, Eagles Video at 15:33:34.  Plaintiff did not retreat; rather he remained the aggressor and was not acting in self-defense. After walking around the back of Mattingly's truck, Plaintiff encountered Mattingly standing outside, on the driver's side. Stillwagon Depo., p. 189-95.  Even though Plaintiff never saw Mattingly holding anything more than a baseball bat, and even though Mattingly was not holding anything at the point in time he was standing outside of his truck, Plaintiff still did not retreat. Stillwagon Depo., p. 190-93.  Instead, he threatened Mattingly, "If you have anything in your hand, I'm going to blow your f---ing head off" and "I'm going to f---ing kill you."  *Id.* at p. 200, 222.  Then, and as Plaintiff has testified, "I kicked him in the knee, and hit him over the head with the gun, and the gun went off straight in the air." *Id.* at 200.

**B.    The Delaware Police Department investigates this incident.**

Delaware Police Officers were dispatched to AutoZone for "a shooting."  [Doc. 203, Ex. A-1, Cruiser Cam at 15:35:50.]   Delaware County Sheriff's Deputy Pitts was the first law enforcement officer on the scene.  Plaintiff told Deputy Pitts - in no uncertain terms - "<u>I'm the shooter, I think I shot the f---er</u>, but I don't think I shot him." Stillwagon Depo., p. 219 (emphasis added).  Deputy Pitts secured Plaintiff in handcuffs and he was placed in the rear of a City of Delaware police cruiser.  While in the cruiser, Plaintiff was *Mirandized*, and he then provided a

3

recorded statement to Officer Ailes, during which he admitted to shooting at Mattingly on multiple occasions. Doc. 203, Ex. A-1, Cruiser Cam.

Defendant Segaard, one of the Defendants against whom summary judgment is sought, was the lead detective on this case. Doc. #160, Segaard Depo. Vol. I, p. 13. The City of Delaware performed a thorough investigation of the incident. Indeed, Ron Martinelli, a law enforcement expert with more than twenty-two years of experience has opined that the Defendants "generally followed trained, recognized and accepted law enforcement and forensic procedures." Ex. A, Martinelli Declaration, Ex. 2, Martinelli Report, p. 29.

Both of the recordings from the scene, (i.e., the Eagles Video and Officer Ailes' Cruiser Cam) supported the filing of charges against Plaintiff. The Eagles Video recorded the attack and, as verified by Ailes' Cruiser Cam, Plaintiff admitted to the attack. The investigating officers gathered physical evidence from the two scenes where shots were fired and obtained statements from individuals who witnessed the altercation. Defendants Segaard and Gerke interviewed Plaintiff at length, and following the conclusion of that interview Defendant Segaard instructed Defendant Willauer to file a criminal complaint charging Plaintiff with felonious assault. Willauer Depo. Vol. II, Doc. #157, p. 158-59, Ex. #136.

As Segaard succinctly testified at his deposition, "Mr. Stillwagon confessed to the entire thing.... [Stillwagon] said he hit [Mattingly] in the head with the gun, and the gun went off…striking somebody with a firearm is still felonious assault. It's a deadly weapon…" Segaard Depo. Vol. I, Doc. #160, p. 139-140.

**C.     A grand jury indicts Plaintiff on four counts of felonious assault.**

Defendant Segaard prepared a grand jury packet and provided that packet to the Delaware County prosecutor's office. Segaard Depo., Vol. I, Doc. #160, p. 14-16, Ex. 156. As correctly

4

noted by Segaard, "The report was classified as a felonious assault, because that's what the investigation determined; but what ultimately the charges would be was up to the prosecutors. That's why we submit these to them prior to the Grand Jury." Segaard Depo., Vol. I, Doc. #160, p. 25 (emphasis added). And as confirmed by First Assistant County Prosecutor Kyle Rohrer, if at any time prior to the Grand Jury proceedings his office believed there were any discrepancies or deficiencies in the Segaard investigative report, the Prosecutor could and would have requested further work be done. Rohrer Depo., Doc. #201, p. 45-46.  The Prosecutor did not make any such requests. Instead, the Prosecutor convened a Grand Jury which, upon considering the evidence presented, including the testimony of Defendant Segaard, issued an Indictment on four counts of felonious assault, with gun specifications. *See* Segaard Depo. Vol. IV, p. 911.

## III.    LAW AND ARGUMENT

### A.    Defendants are absolutely immune from Plaintiff's malicious prosecution claim.

Plaintiff does not address the doctrine of absolute testimonial immunity in his summary judgment motion.  This doctrine operates in this case to bar the Plaintiff's malicious prosecution as a matter of law.  As described in Defendants' Motion for Summary Judgment [Doc. 203][1], a grand jury witness, including a law enforcement officer, has absolute immunity from any §1983 claim based on the witness's testimony.  *Rehberg v. Paul*, 566 U.S. 356, 368 (2012).  This bright line rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution.  *Rehberg*, 566 U.S. at 369.  "Were it otherwise 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the

---

[1]    The arguments contained in Section III(A)(1) of Defendants' Motion for Summary Judgment are incorporated by reference as if fully re-written herein.

preparation instead of the absolutely immune actions themselves.'"  *Id.*, quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (KENNEDY, J., concurring in part and dissenting in part).

Though *Rehberg* was decided in 2012, the Sixth Circuit did not adopt it until 2017, when it held that, even in light of a grand jury indictment, a plaintiff may prevail upon a claim of malicious prosecution only if it can be proven that:  "(1) a law enforcement officer, in the course of setting a prosecution into motion, either knowingly or recklessly makes false statements (such as affidavits or investigative reports), . . . (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff, and (3) the false statements, evidence and omissions do not consist solely of grand jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury)."  *King v. Harwood*, --- F.3d ---, Case No 16-5949, 2017 WL 1130881, *14 (6th Cir., Mar. 27, 2017). There is no evidence that would cause this exception to apply in this case.  Instead, like in *Sanders v. Jones*, 845 F.3d 721, 732 (6th Cir.2017), Plaintiff's claim is that Defendants "misled the prosecutor and the grand jury through negligent and reckless investigation and critical omissions of material evidence." 845 F.3d at 734.

Plaintiff asserts that Defendant Segaard misrepresented the statements he received from several eyewitnesses, and that he presented those misrepresentations to the Prosecutor and ultimately to the grand jury.  Plaintiff also complains about supposed omissions of Defendant Segaard that relate to the totality of Plaintiff's interaction with Mattingly, yet which are entirely unrelated to Plaintiff's use of deadly force.  This type of conduct, the Sixth Circuit has just recently determined, is protected by absolute immunity and as a result, Plaintiff's malicious prosecution claim fails as a matter of law. Plaintiff's Motion for Summary Judgment [Doc. 205] should be denied and summary judgment should be entered in favor of Defendants Segaard and Willauer.

6

**B.** **Defendants Segaard and Willauer are entitled to qualified immunity from Plaintiff's federal claims.**

Summary judgment must be granted in favor of Plaintiff on the federal claims because Defendants Segaard and Willauer are qualifiedly immune from those claims. The doctrine of qualified immunity is discussed at length in Defendants' Motion for Summary Judgment [Doc. 203]. The arguments contained in those motions are incorporated by reference as if fully re-written herein. Briefly, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

When a defendant officer raises qualified immunity as an affirmative defense, the plaintiff bears the burden of demonstrating that the officer is not entitled to that defense. *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir.2009). Qualified immunity shields federal and state officials from liability unless the plaintiff can prove: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct. *Pearson*, 555 U.S. at 231. Importantly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The undisputed facts of this case demonstrate that Defendants - and not Plaintiff - are entitled to summary judgment on Claims 1 and 2.

      **1.** **Plaintiff's false arrest claim fails.**

            **a.** **Defendants did not falsely arrest Plaintiff in violation of the Fourth Amendment.**

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV. A false arrest claim brought under federal law requires a plaintiff to prove

that the arresting officer lacked probable cause to arrest the plaintiff. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir.2005). A police officer has probable cause if there is a "fair probability" that the individual to be arrested has either committed or intends to commit a crime. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir.2002).

> **i.    Defendants had probable cause to arrest Plaintiff for felonious assault.**

Plaintiff was charged with felonious assault. The elements of felonious assault are set forth in R.C. §2903.11(A)(2), which states that "no person shall knowingly… cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance."

Defendants Segaard and Willauer clearly had probable cause to arrest and charge Plaintiff with felonious assault on September 30, 2012. Plaintiff's own statements to the police provided legally sufficient probable cause. As Plaintiff explained to Officer Ailes in a recorded statement "I fired a shot into the side of his truck" and that after Mattingly got out of the truck, "I went over and kicked him in his f-cking leg, and he took a swing at me, and I hit him with the gun hand and the gun went off." Doc. 203, Ex. A-1, Cruiser Cam Recording at 15:48:38.

Indeed, during the course of the interview Plaintiff repeatedly admitted to firing shots at Mattingly. Plaintiff asserts that Defendant Segaard believed that Plaintiff was being truthful throughout the course of the interview. This statement is taken out of context and is not entirely accurate. As Defendant Segaard explained at his deposition, while he felt that Plaintiff was being mostly honest, he believed that "there were probably portions where [Plaintiff] was diminishing his own involvement." Segaard Depo. Vol. I, Doc. #160, p. 186.

ii.   **The evidence did not compel a finding that Plaintiff was acting in self-defense.**

Plaintiff asserts that Defendants should have found that Plaintiff was acting in self-defense when he got off of his motorcycle, approached Mattingly, kicked Mattingly in the leg and hit him in the head with the gun.[2]   The facts simply do not support a finding that this attack was accomplished as an act of self-defense.

Under Ohio law, "[s]elf-defense is an affirmative defense that requires a defendant to prove three elements by a preponderance of the evidence:  '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'"  *State v. Goff*, 942 N.E.2d 1075, 1082, 128 Ohio St.3d 169, 176 (Ohio 2010), quoting *State v. Thomas*, 673 N.E.2d 1339, 1342, 77 Ohio St.3d 323, 326 (Ohio 1997).

As described in Defendants' own Motion for Summary Judgment [Doc. 203], the evidence available to Defendants did not conclusively establish the elements of the affirmative defense.  To the contrary; the evidence produced in this case did not conclusively determine that Plaintiff could establish <u>any</u> of the elements of self-defense.

First, the evidence conclusively established that from the moment he dismounted his motorcycle and began approaching Mattingly with his weapon, Plaintiff became - and until the point in time he struck Mattingly in the head with his weapon-hand he remained - the aggressor. Assuming, *arguendo*, that all the while Plaintiff was still in fear for his safety, as opposed to retreating further Plaintiff instead made a conscious decision to  -  and in fact did  -  create the

---

[2]     Plaintiff does not assert that he shot at Mattingly in self-defense.

9

violent situation for which he was actually, properly and lawfully detained, arrested, charged, investigated and indicted.

Moreover, the evidence did not conclusively establish that Plaintiff could satisfy the second element required to establish self-defense: a bona fide belief that he was in imminent danger. This second element must satisfy both an objective and subjective test. *Thomas*, 673 N.E.2d at 1345, 77 Ohio St.3d at 330-31. First, the factfinder must consider the defendant's situation objectively, that is, whether considering all of the defendant's particular characteristics, knowledge or lack of knowledge, circumstances, history and conditions at the time of the attack he reasonably believed he was in imminent danger. Then, if the objective standard is met, the factfinder must determine if subjectively, this particular defendant had an honest belief that he was in imminent danger. *Id.* In this case, Plaintiff was armed with a deadly weapon and approached the unarmed Mattingly. Under such circumstances, Plaintiff could not have believed himself to be in imminent danger.

When deadly force is used the affirmative defense of self-defense requires that the criminal defendant must show that no means of retreat or avoidance was available to him and that his only means of escape or avoidance was the deadly force that he used. *State v. Dale*, 2013-Ohio-2229, 2013 WL 2406261 (2nd Dist., May 31, 2013), citing *State v. Robbins*, 58 Ohio St.2d 74 (Ohio 1979).

There can be no question that Plaintiff utilized deadly force when he attacked Mattingly. Plaintiff admits that he fired his gun at Mattingly on multiple occasions, and then struck Mattingly on the head with his gun, causing the gun to go off. The evidence produced in this case does not compel a finding that Plaintiff could not retreat and that his only escape was the use of deadly force. Instead, the evidence shows that Plaintiff fired shots at Mattingly as he was driving away, then brandished a gun, told Mattingly that he was going to kill him and then attacked him, kicking

10

him and striking him on the head with a gun, causing the gun to go off.  Since the evidence does not compel that this element is satisfied, Defendants appropriately left that determination to the prosecutors and the Court.  Defendants did not falsely arrest Plaintiff.  Plaintiff's Motion for Summary Judgment should be denied, Defendants' Motion for Summary Judgment should be granted, and this claim should be dismissed with prejudice.

> ### iii. Defendant Willauer had probable cause to issue the criminal charge under the fellow officer rule/collective knowledge doctrine.

Plaintiff asserts that Defendant Willauer lacked probable cause to file the criminal charge because he did not have personal knowledge of the facts included in the charge.  This position fails pursuant to the fellow officer rule.  Variously called the "collective knowledge" or "fellow officer" rule, this doctrine recognizes the practical reality that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another.  *U.S. v. Lyons*, 687 F.3d 754, 766 (6th Cir.2012), citing *United States v. Hensley*, 469 U.S. 221, 229 (1985).  "Because officers must often act swiftly and cannot be expected to cross-examine their fellow officers about the foundation of transmitted information, we impute collective knowledge among multiple law enforcement agencies..."  Under this doctrine, probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of knowledge of the particular officer who may make the arrest.  *U.S. v. Novotny*, 968 F.2d 22 (Table), 1992 WL 121728, *2 (10th Cir., June 5, 1992), citing *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Dist.1985).

As demonstrated above, Defendant Segaard's investigation had produced sufficient evidence to establish probable cause that Plaintiff had feloniously assaulted Mattingly.  Defendant Segaard's knowledge is imputed to Defendant Willauer and, as a result, Defendant Willauer's act

of filing the criminal charge against Plaintiff was also supported by probable cause.  Plaintiff's

Motion for Summary Judgment should be denied.

> **b.      The alleged constitutional violation was not clearly established as of September 30, 2012.**

Assuming, arguendo, that genuine issues of material fact exist regarding whether

Defendants violated Plaintiff's constitutional rights, Defendants are nonetheless entitled to

qualified immunity because that right was not clearly established at the time of the alleged

violation.

Plaintiff cannot satisfy the second prong of the qualified immunity analysis by simply

alleging a violation of extremely abstract rights.  *Anderson v. Creighton*, 482 U.S. 635, 639 (1987).

Instead, the right that the official is alleged to have violated must be clearly established in a more

particularized, and hence more relevant sense:  the contours of the right must be sufficiently clear

such that a reasonable official would understand that what he is doing violates that right.  *Id.* at

639-40.

While it is incorrect to say that an official action is protected by qualified immunity unless

the very action in question has previously been held unlawful, but in light of any pre-existing law,

the unlawfulness of the officials' action must be apparent.  In fact, reasonable mistakes can be

made as to the legal constraints on an official, and when this is the case the official is still entitled

to the immunity defense.  *Id*.  In determining whether a reasonable officer would have known that

his conduct was unlawful, the court is instructed to look first to the precedents of the Supreme

Court, then to case law from the Sixth Circuit, and finally to decisions from other circuits.

*Humphrey v. Mabry*, 482 F.3d 840, 852 (6th Cir.2007).

Ohio courts have consistently held that a person can be convicted of felonious assault

(which requires proof beyond a reasonable doubt, rather than mere probable cause) for striking

another with a firearm.  *See State v. Walker*, 1st Dist. App. No. C-030252, 2004-Ohio-4364, 2004 WL 1857125 (Aug. 20, 2004) (testimony from victim that defendant was holding a gun in his hand while they struggled and that as the hand came down the victim felt a sharp object strike the back of his head was sufficient for jury to convict defendant of felonious assault); *State v. Bean*, 2nd Dist. App. No. 19483, 2003-Ohio-2962, 2003 WL 21344620 (June 6, 2003).  Additionally, the mere act of pointing a gun at a person has been found to be sufficient to establish felonious assault, even when the gun is unloaded, the accused knows that it is unloaded and the accused made no attempt to pull the trigger or to use the weapon in any other manner as a deadly weapon.  *State v. Tate*, 54 Ohio St.2d 444, 446 (Ohio 1978).  Ohio case law demonstrates that the Defendants had probable cause to arrest Plaintiff for felonious assault after he admitted to shooting at Mattingly and then kicking Mattingly and striking him in the head with his gun, causing the gun to discharge.  Defendants are entitled to qualified immunity.  Plaintiff's motion should be denied and the false arrest claim against Defendants should be dismissed with prejudice.

Plaintiff's contention that summary judgment should be entered because Defendants did not determine whether or not Plaintiff could avail himself of the affirmative defense of self-defense under Ohio law must also be rejected.  As described more thoroughly in Defendants' own Motion for Summary Judgment [Doc. 203], officers are not required to engage in extensive legal analysis during the course of an arrest.

For this reason, when the facts known to the officer track the elements of an offense, the Sixth Circuit routinely grants qualified immunity on false-arrest claims, even when the suspect asserts, or circumstances suggest, an applicable affirmative defense.  Police officers are not required to "'inquire into facts and circumstances in an effort to discover if a suspect has an affirmative defense.'"  *Harvey v. Carr*, 616, Fed.Appx. 826, 826 (6th Cir.2015), quoting *Fridley*,

13

291 F.3d at 874-75 (6th Cir.2002) (affirming summary judgment on false-arrest claim when officers were on notice that suspects "were likely to raise entrapment as a defense to any subsequent prosecution," but still could reasonably conclude that the suspects committed a crime); *Young v. Owens,* 577 Fed.Appx. 410, 414-15 (6th Cir.2014) (finding that defendants were entitled to qualified immunity when plaintiff had inconclusive evidence of an affirmative defense); *Rhodes v. Pittard,* 485 Fed.Appx. 113, 116 (6th Cir.2012) (affirming summary judgment on false-arrest claim when the suspect told the arresting officer that he violently shoved another but also asserted that his use of force was justified to protect his property against trespassers).

In this case, the evidence available to Defendants Segaard and Willauer was not enough to conclusively establish Plaintiff's affirmative defense. The determination of the merits of the Plaintiff's affirmative defense was properly left to the attorneys and judges, rather than policemen. *Painter v. Robertson*, 185 F.3d 557, FN21 (6th Cir.1999). Defendants Segaard and Willauer are entitled to qualified immunity. Plaintiff's motion for summary judgment should be denied, and the false arrest claims against Defendants Segaard and Willauer should be dismissed with prejudice.

> **2.  Defendants are qualifiedly immune from Plaintiff's malicious prosecution claim.**
>
> > **a.  Plaintiff cannot produce evidence needed to support a claim for malicious prosecution.**

To succeed on a Fourth Amendment malicious prosecution claim the plaintiff must prove: (1) that a criminal prosecution was initiated against the plaintiff; (2) that the defendant made, influenced, or participated in the decision to prosecute; (3) the defendant lacked probable cause for the criminal prosecution; (4) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial

seizure; and (5) the criminal proceeding must have been resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294 (6th Cir.2010).

As with Plaintiff's false arrest claim, this claim also fails because, as described above, Defendants Segaard and Willauer had probable cause to initiate prosecution against Plaintiff. Under federal law, the issuance of an indictment by a grand jury conclusively determines the existence of probable cause. *Barnes v. Wright,* 449 F.3d 709, 716 (6th Cir.2006). Indeed, the Sixth Circuit has long held that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F.3d 868 (6th Cir.2002). The Sixth Circuit has held that concerns related to deficiencies in an investigation do not constitute evidence of irregularity in the actual grand jury proceedings sufficient to overcome the indictment. *Bakos v. City of Olmsted Falls*, 73 Fed.Appx. 152, 157 (6th Cir.2003).

There is no question that Plaintiff was indicted by a grand jury. Plaintiff details, at length, the statements and alleged misstatements made by Defendant Segaard in presenting the case to the Prosecutor and ultimately to the grand jury. However and as shown above, Defendant Segaard is absolutely immune for actions arising from his grand jury testimony, including investigatory actions that were taken leading up to his testimony.[3] The indictment conclusively determines that the prosecution was supported by probable cause and, for this reason, Plaintiff's malicious prosecution claim fails as a matter of law.

---

[3]    Since Defendant Segaard is absolutely immune from Plaintiff's malicious prosecution claim, further discussion of this claim is not necessary. Nonetheless, Defendants will address the Plaintiff's specific arguments.

### i. There is no evidence that Defendant Segaard ignored exculpatory evidence.

Plaintiff's claims that Defendant Segaard, following the filing of the criminal charge, ignored exculpatory evidence he learned during the course of his further investigation. This claim is simply false. There is no dispute that an officer cannot turn a blind eye toward potentially exculpatory evidence known to him in an effort to pin a crime on someone. *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir.1999). The problem for Plaintiff, however, is that the evidence he claims to be exculpatory simply is not. In order for evidence to be exculpatory it must be both favorable to the accused and material either to guilt or punishment. *Provience v. City of Detroit*, 529 Fed. Appx. 661, 665 (6th Cir.2013). The evidence upon which Plaintiff relies is not exculpatory as it is irrelevant and inculpatory.

As a starting point, Plaintiff, in lengthy detail (from pages 38-52 of Doc. 205), describes the course traveled by Plaintiff and Mattingly along Route 42 and claims that such evidence demonstrates that during that time Mattingly engaged in dangerous driving practices and that Plaintiff was the victim of Mattingly's road rage. This evidence, however is not exculpatory. Plaintiff was not charged with crimes related to his driving or whether the Plaintiff engaged in road rage. Instead, Plaintiff was charged with feloniously assaulting Mattingly in the AutoZone parking lot. The evidence cited by Plaintiff is not exculpatory. In fact, it is irrelevant.

Plaintiff next asserts that the Eagles video is exculpatory. It is not. The Eagles video is actually inculpatory - not exculpatory. The video shows Mattingly enter the AutoZone parking lot, and then shows Plaintiff enter the parking lot - through the same driveway - seconds later. Similarly, the Eagles Video does not show Mattingly drive towards Plaintiff in a threatening manner when he re-entered the parking lot. Mattingly parks his truck at a distance from Plaintiff's motorcycle and the video shows Plaintiff then intentionally bridging the gap between the two,

16

walking toward Mattingly's truck and ultimately attacking Mattingly. Plaintiff admits that after he approached Mattingly, Plaintiff swore at Mattingly, threatened Mattingly, told Mattingly that he would kill him, kicked Mattingly and ultimately struck Mattingly in the head with his gun, causing the gun to fire. The Eagles video is not exculpatory.

Plaintiff's claim that the butt of his gun had Mattingly's blood on it is similarly not evidence of Defendant Segaard ignoring exculpatory evidence. There is nothing exculpatory about this evidence. Instead, assuming this evidence existed, blood on the gun would be direct and compelling evidence that Plaintiff feloniously assaulted Mattingly when he struck him on the head with the gun. This evidence is also inculpatory- not exculpatory.

Plaintiff's comments to Officer Ailes are also not exculpatory. Plaintiff's "near-spontaneous declaration" is an admission of the felonious assault. During the recording, Plaintiff admitted to shooting at Plaintiff multiple times (See Doc. 203, Ex. A, Cruiser Cam at 15:47:20-15:48:28, and that he "kicked [Mattingly] in the f-cking leg, went over, had my gun in my hand, hit him with the gun hand and the gun went off." Doc 203, Ex. A, Cruiser Cam at 15:48:30. Again, the evidence Plaintiff claims to be exculpatory is really inculpatory.

The testimony of Mr. Powell, also claimed by Plaintiff to be exculpatory, is again more evidence that Plaintiff feloniously assaulted Mattingly. Mr. Powell testified that Plaintiff "pistol whipped him with the butt of the gun, and at that point the gun went off." Powell depo. Doc. #181, p. 15. This is more evidence that Plaintiff had feloniously assaulted Mattingly and is certainly not exculpatory.

Plaintiff has failed to produce any evidence that Defendant Segaard ignored exculpatory evidence and, for this reason, his malicious prosecution fails as a matter of law.

17

## ii. Plaintiff cannot establish a malicious prosecution claim based upon fabricated evidence.

Plaintiff asserts that Defendant Segaard fabricated evidence when he interviewed Mattingly in the days following the incident. There is no evidence of this. Indeed, Defendants' law enforcement expert has opined that the interview techniques employed by the Defendants were common and appropriate. Ex. A-2, Martinelli Report p. 43. As Mr. Martinelli explains "[i]t is common and completely appropriate for detectives to tell a witness or a person of interest their statement does not sound accurate; that they believe the subject is not telling the truth; to provide them with a statement that makes more sense; and that they only want a truthful statement." As noted by Mr. Martinelli "the defendant detectives repeatedly questioned Mattingly about his statement and encouraged him to provide the most truthful account he could." *Id*.

Even assuming Defendant Segaard did encourage Mattingly to provide false testimony (which he did not), not all instances of fabrication of evidence are actionable. *Richardson v. Nasser*, 2009 WL 4730446 (E.D. Mich., Dec. 9, 2009). A defendant has a complete defense to a fabrication claim if probable cause would have been found without the fabrication. *Id.* In this case, the statements provided by Plaintiff, the Eagles Video and the Ailes Cruiser Cam all provided ample probable cause that Plaintiff caused or attempted to cause harm to another with a deadly weapon. Since there was probable cause without Mattingly's statements, Plaintiff cannot prevail on a claim that Det. Segaard attempted to fabricate evidence by improperly coaching Mattingly.[4] This claim fails.

---

[4] It should also be remembered that, pursuant to *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012), Defendant Segaard is absolutely immune from this claim, as absolute testimonial immunity may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other §1983 claim concerning the initiation or maintenance of a prosecution. The same is true for the Plaintiff's arguments that Defendant Segaard allegedly misrepresented the statements of eyewitnesses when he prepared his grand jury packet and testified before the grand jury.

18

Finally, Plaintiff asserts that Defendant Segaard fabricated evidence by misrepresenting the statements of eyewitnesses Linkous, Orcena and Brown in his grand jury packet. As with the claims that Defendant Segaard conspired to fabricate Mattingly's testimony, even if these allegations were true, they were irrelevant to the probable cause analysis. Remember, a defendant has a complete defense to a fabrication claim if probable cause would have been found without the alleged fabrication. *Richardson v. Nasser*, 2009 WL 4730446 (E.D. Mich., Dec. 9, 2009). In this case Plaintiff's admissions about his conduct in the AutoZone parking lot provided probable cause for the arrest and prosecution. The eyewitness statements were not material to a finding of probable cause and, as a result, any claim based upon the alleged fabrication fails as a matter of law.

Plaintiff's claim that Defendant Segaard admitted to intentionally misrepresenting the statements of the eyewitnesses is incorrect. Instead, Defendant Segaard testified that it was not his intention to fudge the facts or to make them appear consistent. Doc. # 162, Segaard Depo. Vol. II, p. 446.

Moreover, despite the discrepancies in the statements provided by the three eyewitnesses, each of them reported to Defendant Segaard that Plaintiff was the aggressor and not the victim of the incident that occurred in the AutoZone parking lot. Doc. #162, Segaard Depo. Vol. II, Ex. 171 (transcript of telephone conversation with Linkous); Doc #159, Brown Depo. p. 8-10; Doc #162, Segaard Depo. p. 560.

> **b.** **Plaintiff cannot establish the second element of the qualified immunity analysis.**

As properly applied, qualified immunity protects the officer from making a mistake, regardless of whether his error is a mistake of law, mistake of fact or a mistake based on mixed questions of law and fact. *Pearson*, 555 at 231. In making this determination, the Court is required

to employ a standard of objective reasonableness and in doing so, to analyze claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the officer's position could have believed that his or her conduct was lawful, in light of clearly established law and the information that he possessed. *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994).

In this case, Defendants clearly believed that the evidence in this case provided them with probable cause. Plaintiff had admitting to shooting at Mattingly on multiple occasions and admitted to hitting Mattingly on the head with his gun. He admitted to facts that provided probable cause to charge him with felonious assault. Moreover, the evidence was presented to a grand jury who indicted him.

While Plaintiff is critical of the investigative techniques that Defendants employed, law enforcement expert Ron Martinelli confirmed that Defendants utilized common and appropriate investigative techniques. Defendants did not violate clearly established law and Plaintiff's claim for malicious prosecution fails.

### C. Plaintiff's state law malicious prosecution fails as a matter of law.

#### 1. Defendants are absolutely immune from Plaintiff's state law malicious prosecution claim.

As discussed in Defendants' own Motion for Summary Judgment [Doc. 203, p. 32-33], Defendants should be entitled to absolute immunity from Plaintiff's state law malicious prosecution claim. The arguments contained in Defendants' Motion for Summary Judgment are incorporated by reference as if fully re-written herein.

#### 2. Defendants are immune from Plaintiff's state law malicious prosecution claim pursuant to R.C. §2744.03(A)(6).

As articulated within Defendants' Motion for Summary Judgment [Doc. 203, p. 33-34], Defendants are immune from Plaintiff's state law malicious prosecution claim pursuant to R.C.

§2744.03(A)(6). The arguments contained in Defendants Motion for Summary Judgment are incorporated by reference as if fully re-written herein.

### 3. Plaintiff's state law malicious prosecution claim fails as a matter of law.

Plaintiff does not advance any specific argument related to his state law malicious prosecution claim. As outlined within Defendants' Motion for Summary Judgment [Doc. 203], even if Defendants are not entitled to immunity, Plaintiff's state law malicious prosecution claim fails as a matter of law. To this point, those arguments supporting Defendants' own Motion for Summary Judgment are incorporated by reference as if fully re-written herein.

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment against Defendants Segaard and Gerke [Doc. 205] must be denied. Defendants' Motion for Summary Judgment must be granted [Doc. 203].

Respectfully submitted,

MAZANEC, RASKIN & RYDER CO., L.P.A.

*s/Michael S. Loughry*
DOUGLAS P. HOLTHUS (0037046)
MICHAEL S. LOUGHRY (0073656) Trial Attorney
STACY V. POLLOCK (0080229)
175 South Third Street
Suite 1000
Columbus, OH 43215
(614) 228-5931
(614) 228-5934 – FAX
dholthus@mrrlaw.com
mloughry@mrrlaw.com
spollock@mrrlaw.com

Counsel for Defendants The City of Delaware,
Detective Benjamin Segaard, Former Detective
Patrick Gerke, Office Adam Willauer, Detective
Sergeant Jonathan Radabaugh, Officer James Ailes
and Officer Jason Flynn

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Friday, May 5, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  The following parties were served via regular mail, postage prepaid:

    Richard O. Mattingly
    13765 Ford Lane #4
    Burton, OH 44021

    Richard O. Mattingly
    11695 Nelson Parkman Road
    Garrettsville, OH 44231

                    *s/Michael S. Loughry*
                    DOUGLAS P. HOLTHUS (0037046)
                    MICHAEL S. LOUGHRY (0073656) Trial Attorney
                    STACY V. POLLOCK (0080229)

                    Counsel for Defendants The City of Delaware,
                    Detective Benjamin Segaard, Former Detective
                    Patrick Gerke, Office Adam Willauer, Detective
                    Sergeant Jonathan Radabaugh, Officer James Ailes
                    and Officer Jason Flynn

SCOT-14C058/BIO ECF 205- MSJ Segaard and Willauer

22